**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **APRIL DEFIBAUGH, et al.,** ) | **CASE NO. 1:17 CV 645** |
| ) | |
| **Plaintiffs,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| Vs. ) | |
| ) | |
| **BIG BROTHERS/BIG SISTERS OF** ) | |
| **NORTHEAST OHIO BOARD OF** ) | |
| **TRUSTEES, et al.,** ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** |
| ) | |
| **Defendants.** ) | |

**INTRODUCTION**

This matter is before the Court upon: (1) Motion of Defendants CASA for Kids of Geauga County and Margaret Vaughan to Dismiss Amended Complaint (Doc. 27); (2) Defendant Big Brothers/Big Sisters of Northeast Ohio Board of Trustees' Motion to Dismiss Amended Complaint (Doc. 22); (3) Defendant David Guarnera's Motion to Dismiss Amended Complaint (Doc. 21); and (4) Defendants' Morning Star Friend's Church and Reverend Matthew

1

Chesnes's Motion to Dismiss Amended Complaint (Doc. 24). This is a First Amendment case. For the reasons that follow, defendants' motions are GRANTED.

**FACTS**

Plaintiffs April DeFibaugh and Gregg DeFibaugh bring this lawsuit on behalf of themselves and on behalf of their minor child, V, against defendants Big Brothers/Big Sisters of Northeast Ohio Board of Trustees ("BBBS"), David Guarnera, Morning Star Friends Church ("Morning Star"), Matthew Chesnes, Casa for Kids of Geauga County ("CASA"), and Margaret Vaughan, alleging violations of the First Amendment as to BBBS, Mr. Guarnera, CASA, and Ms. Vaughan (Count One); civil assault and battery as to Mr. Guarnera and Mr. Chesnes (Count Two); and intentional infliction of emotional distress (Count Three), negligence and negligent supervision (Count Four), federal civil conspiracy (Count Five), and state civil conspiracy (Count Six) as to all defendants. For purposes of ruling on the motions, the facts in the amended complaint are presumed true.

According to the amended complaint, plaintiffs are the parents and natural guardians of V, a minor with disabilities. V's older sister had behavioral problems, which caused Geauga County's social services agency to open a case file on her. During the court proceedings relating to V's sister, the Geauga County Juvenile Court determined that V was a "dependent" in need of a guardian ad litem ("GAL"), and ordered CASA to assign a GAL to V.

Defendant CASA is a nonprofit entity that exists solely to train and supervise the assignment of GALs to children in juvenile court cases, and CASA has an exclusive contract with the Geauga County Juvenile Court. Pursuant to the court's order, CASA assigned its employee defendant Vaughan to be V's GAL, which the court approved.

2

Vaughan was a member of defendant Morning Star Friends Church. According to the amended complaint, Vaughan preached to plaintiffs about Christianity and "left" plaintiffs with books, tapes, CDs, and other works of religious content. Mr. and Mrs. DeFibaugh complained to Vaughan's supervisors at CASA because they felt that Vaughan was trying to influence their religion and children's upbringing, and if they did not follow Vaughan's directives, Vaughan could recommend V's removal from their home. Despite these complaints, Vaughan continued to serve as GAL to V and continued preaching to plaintiffs.

According to the amended complaint, Vaughan believed that V would benefit from adult socialization, and introduced him to defendant Guarnera, another member of Morning Star. Plaintiffs allege that Vaughan recommended that Guarnera become a volunteer with defendant BBBS so that his social contacts with V could be provided under the auspices of a non-sectarian organization. Vaughan recommended to the juvenile court that BBBS and Guarnera be assigned to help V. The court accepted her recommendation and approved Guarnera as V's Big Brother.

Plaintiffs allege that throughout 2015 and 2016, Guarnera was V's Big Brother and took him to baseball games, his own house, and to defendant Morning Star for picnics and other events. Against the express wishes of Mr. and Mrs. DeFibaugh, Guarnera often spoke to V about religion. He also told V that he did not like families that did not believe in God.

On August 28, 2016, Guarnera told V's parents that he would be taking V to a picnic at Morning Star. Plaintiff alleges that Guarnera, Chesnes, who is the pastor at Morning Star, and Morning Star planned to have V baptized at the picnic. Guarnera told V that he would no longer take him to baseball games if he did not go through with the baptism. At the picnic, Chesnes asked whether anyone in attendance wished to be baptized, and Guarnera pushed V out of his

chair to indicate that he wanted to be baptized. Plaintiffs allege that V was confused and did not fully understand the concept of a baptism. Chesnes conducted the baptism by forcing V under water and holding his head to the point where V felt like he was choking and could not breathe. Guarnera took V home after the picnic and informed V's parents about the baptism. V's parents then ceased contact with Guarnera and BBBS.[1]

Plaintiffs filed this lawsuit alleging federal and state claims. This matter is now before the Court upon all defendants' motions to dismiss.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of civil procedure, "[d]ismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide*

---

[1] Defendants submit a journal entry from the Geauga County Juvenile Court showing that the guardianship was terminated on June 5, 2015, which was fourteen months before the alleged baptism. Plaintiffs urge the Court not to consider that journal entry or any other facts outside of the amended complaint without converting the motions into motions for summary judgment. Although the Court generally may not consider facts that are outside of the amended complaint, the law is clear that this Court "may consider . . . public records . . . and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims therein, without converting the motion to one for summary judgment." *Gavitt v. Born,* 835 F.3d 623 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.,* 807 F.3d 768, 774 (6th Cir. 2015) and *Bassett v. Nat'l Collegiate Athletic Ass'n.,* 528 F.3d 426, 430 (6th Cir. 2008)). The journal entry is a public record central to plaintiffs' claims, so this Court may consider it. However, dismissal of plaintiffs' claims is warranted regardless of the journal entry.

*Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.[2]

**ANALYSIS**

---

[2] Although all six defendants moved for dismissal under Fed. R. Civ. Pro. 12(b)(6), some defendants additionally moved under Rules 12(b)(1), 12(h)(3), and 12(c). In that all of defendants' arguments amount to a failure to state a claim, this Court will address all of them under Rule 12(b)(6).

5

## I. Count One (42 U.S.C. § 1983)

### A. State Action

Defendants move to dismiss on the basis that plaintiffs have failed to state a claim for violation of the First Amendment pursuant to 42 U.S.C. § 1983. To prevail on a claim under this statute, plaintiffs must establish (1) the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003). Defendants will be considered state actors for the purposes of §1983 only if the conduct that allegedly gave rise to the deprivation of the plaintiffs' constitutional rights may be "fairly attributable to the state." *Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citing *Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922 (1982)). Whether defendants are state actors is a question of law for the Court. *See Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). Plaintiffs allege that defendants unlawfully deprived them of their First Amendment right to freedom of religion. Defendants argue that the federal claims against them must be dismissed because their actions cannot be considered "state action" taken under color of state law.

The Sixth Circuit has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the state. *Marie v. American Red Cross,* 771 F.3d at 362. Plaintiffs have identified and argued three of these tests: (1) the substantial nexus

test (also known as the symbiotic relationship test); (2) the state compulsion test; and (3) the entwinement test.[3]

### 1. CASA

Plaintiffs argue that CASA was a state actor for purposes of § 1983. CASA does not disagree but rather focuses on its absolute judicial immunity, which is addressed below. Given CASA's lack of defense in this regard, the Court will assume for purposes of these motions that the actions allegedly taken by CASA were taken under color of state law.[4]

### 2. Margaret Vaughan

Plaintiffs argue that Vaughan, the GAL who derived her authority from CASA and the juvenile court, was a state actor under both the nexus and entwinement tests. Plaintiffs argue that Vaughan used her authority as GAL to coerce and pressure plaintiffs into accommodating her religious beliefs. Defendants argue that, as a matter of law, actions taken by GALs are not taken under the color of state law. Upon review, the Court agrees with defendants that Vaughan's conduct was not fairly attributable to the state under either the nexus or entwinement tests.

---

[3] Plaintiffs also argue that all the defendants should be considered state actors because they conspired with state officials to violate plaintiffs' First Amendment rights. (Doc. 30 at 10). The Court will address this argument in the context of plaintiffs' federal conspiracy claim below.

[4] The Court questions whether CASA is a state actor given that CASA is, according to the Amended Complaint, "a nonprofit entity that exists solely to train and supervise . . . GALs . . . in juvenile court cases." (Doc. 20, ¶ 13).

Under the nexus test, private conduct constitutes state action when there is a "sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992); *Reguli v. Guffee*, 2010 WL 1252950, *9 (6th Cir. Mar. 31, 2010). It must be demonstrated that the state is "intimately involved" in the challenged private conduct in order for that conduct to be attributed to the state for purposes of § 1983. *Id.* GALs in particular are not state actors under the nexus test where the "state exercised no coercive power over defendant's independent judgment." *Reguli v. Guffee*, 2010 WL 1252950 at *10. This is because the role of the guardian is to act as an advocate of the child. *See, e.g. McClear v. Donaldson,*1987 WL 36589 (6th Cir. Jan. 28, 1987); *Ismaiyl v. Brown*, 2016 WL 4581335 (N.D. Ohio, Sept. 1, 2016) (Nugent); *Catudal v. Browne*, 2012 WL 1068530 (S.D. Ohio Mar. 29, 2012) (report and recommendation, adopted in *Catudal v. Brown*, 2012 WL 1476088 (S.D. Ohio April 24, 2012)). Plaintiffs allege that Vaughan was selected by CASA and appointed by the juvenile court. (Doc. 20, ¶ 15). Plaintiffs further allege that they complained to employees at CASA about Vaughan but that she was not removed as GAL. *Id.* at ¶¶ 18-19. These sparse allegations do not demonstrate that CASA or the juvenile court were "intimately involved" in Vaughan's conduct or exercised "coercive power" over her independent judgment as the nexus test requires. Although plaintiffs argue that CASA "apparently approved of and encouraged" Vaughan's conduct, this conclusion is not supported by any of the statements or allegations in the amended complaint.

Plaintiffs argue that *Reguli* supports their position. In *Reguli*, the court stated that "it is conceivable that a more expansive type of guardianship role could satisfy the nexus test." *Id.;*

*see also Kirtley v. Rainey*, 326 F.3d 1088, 1095 (9th Cir. 2003) ("Although it is conceivable that a more expansive type of guardianship role could satisfy the nexus test . . . the actions of the guardian at issue here do not appear to be 'fairly attributable to the state.'"). For example, in *Thomas v. Morrow*, 781 F.2d 367, 377 (4th Cir. 1986), the guardian at issue had significant authoritative powers, including custody of his ward, power to enable the ward to receive medical, legal, psychological, or other professional care, and the power to replace the ward's authority to make decisions. *Id.* The Fourth Circuit held that the guardian, who performed a custodial function pursuant to state law and worked closely with state officials to perform his duties, was a state actor for purposes of § 1983. *Id.* at 378. Plaintiffs ask this Court to apply *Reguli* and *Thomas* here because GALs in Ohio are court-appointed and wield significant authority, including performing "whatever functions are necessary to protect the best interest of the child." Ohio Rev. Code § 2151.281(I); *see also In re Alfrey,* 2003 WL 262587 (Ct. App. July 3, 2003) ("A guardian ad litem is an agent of the court and, while charged to protect the child's best interest, owes his or her first duty to the court itself.").

This Court finds that plaintiffs have not alleged sufficient facts to support their argument that Vaughan's role as GAL was expansive enough to satisfy the nexus test and the standards set forth in *Thomas* and *Reguli*. Plaintiffs allege that Vaughan was GAL for V, a minor. In her capacity as GAL, Vaughan was empowered to investigate, mediate, monitor court proceedings, and file motions and other court papers on behalf of V. *See* Ohio Rev. Code § 2151.281(I). These powers fall short of the expansive powers granted to the custodial guardian in *Thomas*, which included establishing the adult ward's domicile and replacing the adult ward's authority to make decisions for himself. *Thomas,* 781 F.2d at 377. Plaintiffs do not make any factual

9

allegations that demonstrate that Vaughan was given power or authority that would rise to the "expansive guardianship role" contemplated by the Sixth Circuit in *Reguli*.

The crux of plaintiffs' argument seems to be that Vaughan abused her court-granted authority by mixing her Christian beliefs with her role as GAL and imposing those beliefs on plaintiffs. While Vaughan may have abused her power, this unilateral abuse of authority is not sufficient to render Vaughan a state actor under the nexus test.

Plaintiffs also cannot establish that Vaughan was a state actor under the entwinement test. Under the entwinement test, plaintiffs must show that Vaughan was "entwined with governmental policies" or that the government was entwined in Vaughan's management or control. *Marie v. American Red Cross*, 771 F.3d at 363. As with the nexus test, "mere cooperation simply does not rise to the level of merger required for a finding of state action." *Id.* at 364. The Sixth Circuit has stated that the "crucial inquiry" under this test is whether the "nominally private character" of Vaughan was "overborne by the pervasive entwinement of public institutions and public officials in [her] composition and workings such that there is no substantial reason to claim unfairness in applying constitutional standards to [her]." *Id.* The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Hinton v. Teodosio*, 2012 WL 5354584, *9 (N.D. Ohio Oct. 29, 2012) (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988)).

Plaintiffs argue the following governmental actions were entwined with Vaughan: CASA selected and then subsequently failed to remove Vaughan as GAL after plaintiffs complained about her, and the juvenile court later accepted Vaughan's recommendations with respect to BBBS and Guarnera, which contributed to the deprivation of plaintiffs' First Amendment rights.

10

Upon review, the Court finds that Plaintiffs' allegations do not rise to the level of state involvement required by the entwinement test. As set forth above, plaintiffs' allegations amount to an alleged abuse of power by Vaughan alone. The fact that the juvenile court appointed Vaughan and accepted her recommendations with regard to BBBS and Guarnera does not transform her into a state actor. Further, plaintiffs' allegations do not suggest that the juvenile court or CASA was excessively intertwined with Vaughan's management or control such that her conduct is fairly attributable to the state.

As such, this Court finds that plaintiffs have failed to adequately allege that Vaughan's conduct rises to the level of state action under the nexus test or the entwinement test.

### 3. BBBS and David Guarnera

Plaintiffs argue that Defendants BBBS and Guarnera were state actors under the nexus test because the juvenile court appointed BBBS and Guarnera to assist V. As a result of Guarnera's appointment, plaintiffs felt compelled to allow V to spend time with Guarnera. Plaintiffs allege that Guarnera's actions were condoned, encouraged and made possible by Vaughan. BBBS and Guarnera argue that they were not state actors because Guarnera was merely a private volunteer working for a private nonprofit organization, and Vaughan's recommendation to the juvenile court did not elevate their conduct to state action.

Upon review, this Court agrees with defendants. The Court has already found that Vaughan was not a state actor. Therefore, plaintiffs must allege that CASA or the juvenile court had a sufficiently close nexus with either BBBS or Guarnera for their conduct to constitute state action. Plaintiffs have not done so. The court appointment of BBBS and Guarnera does not

11

establish that the state was "intimately involved" in the private conduct such that a sufficiently close nexus existed. *See Wolotsky*, 960 F.2d at 1336; *Reguli*, 2010 WL 1252950 at *9.

Plaintiffs also have not set forth factual allegations sufficient to establish that BBBS or Guarnera were state actors under the state compulsion test. The state compulsion test requires that a state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn,* 960 F.2d at 1335. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.*

Plaintiffs' argument – that Vaughan recruited Guarnera and directed him to volunteer with BBBS, constituting "significant encouragement, if not outright compulsion" under the compulsion test – assumes that Vaughan was a state actor. Vaughan was not a state actor, so her actions with regard to Guarnera cannot bind the state. Further, there are no factual allegations that CASA had any knowledge of the involvement of BBBS or Guarnera in V's case. As set forth above, the allegations that BBBS and Guarnera were appointed by the juvenile court also do not elevate defendants' private conduct to that of state action. *Wolotsky v. Huhn,* 960 F.2d at 1335 ("More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives.").

For the same reasons, plaintiffs' allegations fail under the entwinement test. Plaintiffs have not alleged that BBBS or Guarnera were "entwined with governmental policies" beyond being appointed by the court. That appointment does not elevate defendants' private conduct to state action.

### 4. Morning Star and Matthew Chesnes

Although Defendants Morning Star and Chesnes set forth arguments as to why they are not state actors under § 1983, Count I of the amended complaint was not asserted against these defendants. Therefore, the Court will not reach these arguments.

Because Vaughan, Guarnera, and BBBS did not act under color of state law and, as set forth below, did not conspire with state actors to deprive plaintiffs of their First Amendment rights, the § 1983 claims against them will be dismissed.

### B. Immunity

#### 1. CASA

Defendant CASA argues that it is an arm of the Geauga County Juvenile Court and plays an integral role in the judicial process and is therefore immune from § 1983 liability. CASA cites *Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir. 1989), in support of its argument. In response, plaintiff argues that CASA acquiesced to Vaughan's improper conduct by failing to remove her as GAL after plaintiffs complained about her. (Doc. 20, ¶ 19). Plaintiffs provide no other argument specific to CASA as to whether CASA should be entitled to absolute immunity. Neither plaintiffs nor defendants cites any case involving an entity such as CASA.[5]

Upon review, and assuming for purposes of these motions that CASA is a state actor, the Court finds that CASA is absolutely immune from liability. The Court agrees with defendants that it should adopt a "functional approach" as to whether the actions of CASA fit within the

---

[5] The case cited by defendants in support of their argument, *Gardner v. Parson*, 874 F.2d 131 (3d Cir. 1989), adopts a functional analysis as to guardians ad litem as individuals, not to entities such as CASA.

common law tradition of absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Cooper v. Parrish*, 203 F.3d 937, 944 (6th. Cir. 2000).

The central issue with regard to CASA's immunity is whether CASA's conduct can be considered judicial in nature. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Plaintiffs allege that CASA is a quasi-governmental entity and that CASA's purpose is to provide GALs to families who have cases in juvenile court. (Doc. 20, ¶ 8). CASA was ordered by the juvenile court to assign a GAL to V. (Doc. 20, ¶ 15). Pursuant to this order, CASA assigned Vaughan. *Id.* Enforcing or executing a court order is intrinsically associated with a judicial proceeding, and CASA is therefore entitled to immunity from plaintiffs' § 1983 claim. *Bush*, 38 F.3d at 847.

Plaintiffs argue that CASA's failure to respond to their complaints about Vaughan strips CASA of its immunity. The Court disagrees. CASA's actions in appointing (and subsequently not removing) Vaughan as GAL were taken in its official capacity and pursuant to the juvenile court order. As such, CASA is entitled to absolute immunity from plaintiffs' § 1983 claim.

### 2. Margaret Vaughan

Vaughan argues that even if this Court were to find that she acted under the color of state law, dismissal is still appropriate because she is absolutely immune from plaintiffs' claims. In support of her argument, Vaughan cites *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984). In response, plaintiff argues that absolute immunity is not without limits and that immunity only extends to acts integral to the judicial process, not to officials whose role happens to include judicial functions. Plaintiff argues that Vaughan's conduct exceeded her responsibilities as GAL and fell outside the scope of any immunity to which she might otherwise have been entitled.

14

This Court has already found that Vaughan was not a state actor for purposes of § 1983. Even if this Court had found that Vaughan was a state actor, however, she would be absolutely immune from liability for plaintiffs' claims.

The United States Supreme Court has applied a "functional approach" in determining whether particular actions of government officials fit within a common-law tradition of absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. at 269; *Cooper v. Parrish*, 203 F.3d at 944. This approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* A guardian ad litem is not immune "for acts taken in the clear absence of all jurisdiction." *Dahl v. Charles F. Dahl, M.D., P.C., Defined Ben. Pension Trust*, 744 F.3d 623, 630 (10th Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). However, an act is not outside of a GAL's jurisdiction just because it is wrongful, or even unlawful. *Id.* "Immunity is conferred so judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort." *Id.* GALs are entitled to absolute quasi-judicial immunity for performing job duties that are a part of the judicial process. *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984); *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989) (allegations of malice, bad faith, or a claim of conspiracy will not defeat the protection of absolute immunity for actions taken by GAL pursuant to court orders).

Upon review, the Court agrees that, even if Vaughan's actions were taken under color of state law, she would be entitled to absolute immunity for her actions taken as GAL. Plaintiffs allege that Vaughan, *in her capacity as GAL,* preached to plaintiffs and "left" them with books, tapes, CDs, and other works of religious content. *(*Doc. 20, ¶ 17). Plaintiffs also allege that Vaughan, as GAL, recommended that Guarnera and BBBS work with V to assist with his "social

15

awkwardness." (Doc. 20, ¶¶ 20-24). These allegations explicitly state that Vaughan's misconduct took place in her role as GAL. Indeed, plaintiffs' argument that Vaughan acted under color of state law requires that Vaughan took her action in her capacity as GAL. Because plaintiffs have not alleged facts to demonstrate that Vaughan's misconduct took place outside of her role as GAL, she would be entitled to absolute immunity for those actions if she were found to be a state actor. *See Chee v. Washtenaw County, Mich.,* 2008 WL 2415374 (E.D. Mich. June 12, 2008) ("Because plaintiff accuses Towler of misconduct in her role as guardian ad litem, Towler is entitled to absolute immunity from suit and must be dismissed from this lawsuit.")

In sum, as to Count One, this Court finds that Vaughan, Guarnera, and BBBS did not act under color of state law and CASA is immune from § 1983 liability.[6] Therefore, the Court need not address the first prong of the § 1983 claim (whether plaintiffs have adequately alleged the deprivation of a right secured by the Constitution). Count One will be dismissed.

### II. Count Five (Federal Conspiracy under § 1983)

Plaintiffs have alleged a federal civil conspiracy claim against all the defendants. A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Express agreement among all the conspirators is not necessary to find that a civil conspiracy existed. *Id.* at 944. Instead, plaintiffs must show that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy, causing injury to plaintiffs. *Id.*

---

[6] As set forth in detail below, defendants are also not state actors by virtue of having engaged in a conspiracy to violate plaintiffs' First Amendment rights.

16

In the case of civil conspiracy based on a § 1983 claim, plaintiff must come forward with factual allegations showing (1) the existence of a conspiracy; and (2) an actual deprivation of a right secured under the Constitution by persons acting under the color of state law. *Jackim v. City of Brooklyn,* 2007 WL 893868, *16 (N.D. Ohio Mar. 22, 2007) (citing *Abdullah v. Harrington*, 1994 WL 532932, *2 (6th Cir. 1994)). Conspiracy claims under § 1983 must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). When private persons willfully participated in a joint action with state agents, those private persons may be held liable under § 1983. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. Memphis*, 361 F.3d 898, 905 (6th Cir. 2003); *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) ("Thus, a private party may conspire with the state and be liable under § 1983."); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting . . . 'under color' of law for purposes of § 1983 actions"). As set forth above, the Court has concluded that Vaughan, BBBS, Guarnera, Morning Star, and Chesnes are not state actors. CASA, however, did not argue that it is not a state actor, choosing instead to focus on its own immunity.[7] Therefore, in order to state a claim for federal civil conspiracy based on § 1983, plaintiffs' amended complaint must sufficiently allege that a conspiracy existed between CASA and the private defendants in an effort to deprive plaintiffs of their First Amendment rights.

---

[7] In *Dennis,* the Supreme Court held that the private parties were acting under color of law when they allegedly bribed a judge, even though the judge with whom they were alleged to have conspired was immune from liability. 449 U.S. at 28.

Plaintiffs allege that Guarnera conspired with Vaughan and the other defendants to coerce the DeFibaugh family into religious practice. (Doc. 20, ¶¶ 21-24). Defendants argue that plaintiffs' conspiracy claim should be dismissed because it is not pled with the requisite specificity.[8] In response, plaintiffs argue that they have specifically alleged that Vaughan and Guarnera used their official positions, as appointed by the juvenile court and CASA, to unlawfully coerce the DeFibaugh family into religious practice. Plaintiffs argue that Vaughan and Guarnera, supported by CASA and BBBS, engaged in a two-year effort to deprive plaintiffs of their First Amendment rights, culminating in the baptism of V.

Upon review, the Court agrees with defendants. In order to state a claim for federal civil conspiracy under § 1983, plaintiffs must allege that the private actors (Vaughan, Guarnera, BBBS, Chesnes, and Morning Star) jointly engaged with the state actor (CASA) to deprive plaintiffs of their First Amendment rights. Plaintiffs' amended complaint is wholly devoid of factual allegations that CASA conspired with the private defendants. Plaintiffs' allegations relating to CASA's recommendation of Vaughan to the juvenile court and CASA's failure to subsequently remove Vaughan as GAL do not demonstrate that CASA had entered into an agreement with Vaughan to deprive plaintiffs of their First Amendment rights. Plaintiffs allege that Vaughan conspired with Guarnera, but there is no allegation that CASA had any knowledge of Guernera's involvement in V's case. Plaintiffs have alleged nothing to support the existence

---

[8] Defendants Morning Star and Chesnes also set forth a variety of arguments which rely on facts not alleged in the amended complaint as bases for their motion to dismiss. This Court will not consider facts that were not alleged in the amended complaint and will address only the argument that the federal conspiracy claim was not pled with the requisite specificity.

of an agreement, express or implied, between CASA and any other defendant to deprive plaintiffs of their First Amendment rights. Without the necessary factual allegations, plaintiffs have not stated a claim for federal civil conspiracy and this claim against all defendants must be dismissed.

### III. Counts Two, Three, Four, and Six (State Law Claims)

Because the Court disposes of plaintiffs' federal claims by this Order, the Court declines to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3). Plaintiffs' state law claims are hereby dismissed without prejudice. *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

### **CONCLUSION**

For the foregoing reasons, Motion of Defendants CASA for Kids of Geauga County and Margaret Vaughan to Dismiss Amended Complaint (Doc. 27); Defendant Big Brothers/Big Sisters of Northeast Ohio Board of Trustees' Motion to Dismiss Amended Complaint (Doc. 22); Defendant David Guarnera's Motion to Dismiss Amended Complaint (Doc. 21); and Defendants' Morning Star Friend's Church and Reverend Matthew Chesnes's Motion to Dismiss Amended Complaint (Doc. 28) are GRANTED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 10/16/17